UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RASHEED I. MUHAMMAD,        )
                            )
        Petitioner,          )
                            )
    v.                       )    Case No. 4:13-CV-0311-AGF
                            )
TROY STEELE,                )
                            )
        Respondent.          )

# MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Rasheed Muhammad for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 26, 2008, Petitioner entered a blind plea of guilty in the Circuit Court of St. Louis, Missouri, to second-degree murder and armed criminal action. Petitioner was sentenced on January 23, 2009, to a 25-year term of imprisonment on each count, to be served concurrently. For habeas relief, Petitioner asserts that his constitutional rights were violated in two ways:

1. Petitioner claims his plea counsel rendered ineffective assistance in promising Petitioner that he would not be sentenced to more than 20 years if he pled guilty; and

2. Petitioner claims his plea counsel rendered ineffective assistance in failing to advise Petitioner about the feasibility of a self-defense claim or the possibility that a jury might find for a lesser-included offense on the murder charge.

For the reasons set forth below, the petition for habeas relief will be denied.

## BACKGROUND

### Charges and Guilty Plea Hearing

On November 26, 2008, Petitioner entered a blind plea of guilty to second-degree murder and armed criminal action with regard to the July 2, 2007 shooting death of Djuan Rives. At the plea hearing, Petitioner was informed by the plea court that he would not be sentenced to more than the state's recommended sentence of 25 years on each count, to run concurrently. (Doc. No. 22-3 at 4, 12-13.) The court also informed Petitioner that it would be unlikely to depart from the State's recommendation of 25 years because Petitioner was a persistent offender. The plea court explained to Petitioner at the hearing:

> But I also told your attorney that it is very unlikely that I would cut the recommendation [of 25 years] also because – and the main reason being is they pled you up as a persistent offender, and [assistant prosecuting attorney] Monahan tells me that he would be able to prove that you are a persistent offender. That's why I'm putting that on the record also.

(Doc. No. 22-3 at 13-14.)

The State then recited the evidence which it would have tendered at trial:

> There were at least seven people that saw the defendant engage in a verbal altercation with at least seven people and one of the friends which was Djuan Rives who - - there may have been some physical contact between the individuals and several of the witnesses. They noticed that the defendant had a gun on him, and several of the witnesses also would testify that the defendant, after Djuan Rives slipped and fell into him, that the defendant then pulled this handgun, this 9 millimeter Jennings pistol, and shot the victim once in the

> chest and - - which killed him. Witnesses also saw the defendant hide a 9 millimeter Jennings pistol in the side of a dumpster which they told police about and was recovered that night.

*Id*. at 18-19.

Petitioner agreed that these recited facts were substantially correct. Petitioner also acknowledged that his attorney fully explained the elements of the crime and any possible defenses; that she investigated the case to his complete satisfaction; that she adequately and effectively represented him in defense of all charges; and that Petitioner did not know of anything she could have done that she had not. *Id.* at 17, 21-22. Petitioner then acknowledged the rights he was waiving by entering a guilty plea and acknowledged that no promises or threats had been made to him to induce his plea of guilty. *Id.* at 20-24.

The plea court accepted Petitioner's pleas of guilty, finding that there was a factual basis for each count and that Petitioner's pleas of guilty were made voluntarily and intelligently with a full understanding of the charges and the consequences of pleading guilty. *Id*. at 25.

**<u>Sentencing Hearing</u>**

On January 23, 2009, Petitioner was sentenced to 25 years on each of the two counts, to run concurrently. Petitioner again indicated that his attorney did not communicate any threats or promises to induce him to plead guilty. Petitioner testified that his counsel did everything that he asked before he entered a plea of guilty. He agreed that he was "satisfied with the services rendered to [him] by [counsel]," whether

or not he was satisfied with the outcome of this case, which the sentencing court explained was that he would go "to the penitentiary for 25 years." The sentencing court found that "no probable cause exists to believe the defendant has received ineffective assistance of counsel." (Doc. No. 22-3 at 39-42.)

**Motions for Post-Conviction Relief**

On June 24, 2009, Petitioner filed an Amended Motion to Vacate, Set Aside or Correct the Judgment and Sentence, with the assistance of appointed counsel, and a request for an evidentiary hearing. In his motion Petitioner raised the same two claims at issue here: that plea counsel promised him the court would sentence Petitioner to no more than 20 years in exchange for his guilty plea, and that plea counsel failed to advise Petitioner of the potential for a self-defense claim or that a jury might convict him of a lesser-included offense including voluntary or involuntary manslaughter. Petitioner asserted that he would have gone to trial if he had been aware of the likely 25-year sentence or the possibility of arguing for self-defense or a lesser included offense, and that, as a result, his plea was rendered involuntary. *Id.* at 64-76.

The motion court overruled Petitioner's post-conviction motion for relief, without an evidentiary hearing. The motion court found that the record refuted Petitioner's first claim, relying upon Petitioner's own representations at the plea and sentencing hearings that no threats or promises were made to induce him to plead guilty, and that he was satisfied with his counsel's work. *Id.* at 81-84. The motion court did not respond to the second claim—that plea counsel failed to advise Petitioner of the possibility of a self-defense claim or the possibility of a verdict for a lesser-included offense.

4

Petitioner's only argument on appeal was that the motion court improperly failed to address his second claim. (Doc. No. 22-1 at 10-11.) The Missouri Court of Appeals ruled that the motion court was required to issue findings and conclusions on all issues and was not excused from doing so in this case by any recognized exception. *Muhammad v. State*, 320 S.W.3d 727, 729 (Mo. Ct. App. 2010) ("*Muhammad I*"). The Missouri Court of Appeals therefore remanded the case for the motion court to issue findings of fact and conclusions of law with regard to Petitioner's second claim. *Id.*

On remand, the motion court issued findings and conclusions regarding Petitioner's second claim—that defense counsel failed to advise him concerning the potential of a self-defense claim and the possibility that a jury might have convicted him of a lesser-included offense. The motion court found this claim to be refuted by the record, relying on Petitioner's testimony at the plea and sentencing hearings. Specifically, the motion court relied on Petitioner's representations that:

> counsel did not refuse to comply with any of his requests, that she answered all of his questions regarding the charges pending against him, that he had enough time to discuss the case with counsel, that he had no complaints or criticisms of counsel's representation, that he didn't know of anything that she could have done that she didn't, that he didn't give her a list of witnesses to interview in reference to any possible defense or defense that he might have, that counsel investigated the case to his complete satisfaction, that he had been advised of all aspects of his case including legal rights and possible consequences of his plea, and that counsel had adequately, completely, and effectively represented him in his defense to the charges pending against him.

(Doc. No. 22-9 at 51.)

Petitioner appealed the motion court's revised opinion only with regard to the claim that counsel failed to advise Petitioner of the possibility of self-defense or conviction of a lesser-included offense of second-degree murder. (Doc. No. 22-6 at 14.) Specifically, Petitioner argued that the failure of counsel to so advise him was a factual issue not refuted by the record, and that Petitioner's repeated representations that he was satisfied with counsel should be disregarded, because at the time of the plea, Petitioner was unaware that a self-defense theory might be viable, or that he might be convicted on a lesser-included offense. In support of his contentions, Petitioner relied on *Bequette v. State*, 161 S.W.3d 905, 908 (Mo. Ct. App. 2005) (finding the movant, who was convicted of criminal non-support of his minor children, was entitled to an evidentiary hearing on his motion for post-conviction relief where at the time of the plea defense counsel had not informed him of the defense of in-kind support). Petitioner did not appeal the motion court's ruling with regard to his first claim for relief, i.e., that counsel promised Petitioner he would be sentenced to no more than 20 years if he pled guilty.

The Missouri Court of Appeals affirmed the motion court's denial of Petitioner's request for post-conviction relief, holding that the motion court's findings and conclusions were not clearly erroneous and agreeing that the record clearly indicated that Petitioner voluntarily and knowingly entered a plea of guilty. *Muhammad v. State*, 367 S.W.3d 659, 663 (Mo. Ct. App. 2012) ("*Muhammad II*"). The appellate court first found that Petitioner's claim was refuted by the record. Like the motion court, the appellate court noted Petitioner's specific acknowledgements that counsel fully explained the nature of the charges and the elements of those charges, that counsel had explained any

possible defense, that he had been advised of all aspects of his case and the possible consequences of his guilty plea, and the affirmation at sentencing that he was satisfied with the services rendered by counsel. In light of these statements, the court found that "[t]he record, therefore, clearly demonstrates that defense counsel fully advised [Petitioner] of the nature of the charges and defenses to those charges." *Id.* at 662.

The Missouri Court of Appeals further found that Petitioner's case was distinguishable from *Bequette*, because while in *Bequette* there was a substantial possibility that the movant was not aware of a particular "highly technical" defense, "[s]elf defense is not a technical or sophisticated legal defense that is beyond the knowledge of a layperson." *Id.* at 663. The court concluded that the record did not support any claim that Petitioner was unaware of the principles of self-defense. The court similarly stated that it was "not persuaded that the possibility of being convicted of a lesser offense to second-degree murder is beyond the realm of knowledge of a lay person." *Id.*

**Federal Habeas Petition**

Petitioner again raises the same two claims in his federal habeas petition. Respondent argues that Petitioner's first claim was procedurally defaulted because Petitioner did not advance the claim when he appealed the denial of his motion for post-conviction relief, and Petitioner has failed to demonstrate cause and prejudice for the default, or actual innocence which might excuse this procedural default. Second, Respondent argues that even considered on its merits, Petitioner's first claim fails because the record reflects that Petitioner's guilty plea was knowing and voluntary.

7

Respondent argues that Petitioner's second claim similarly fails because the state courts reasonably adjudicated the claim. Petitioner filed a traverse, in which he reiterates his claims and suggests that the Court should consider that Petitioner was assaulted by the victim and his confederates prior to the victim's death. Petitioner also proffers an eyewitness handwritten statement, which he claims supports that Petitioner was assaulted prior to shooting Rives. Petitioner asserts that he was outnumbered, could not leave, and believed his life was in danger, and thus, his claim for habeas relief based on counsel's failure to discuss a self-defense theory should be granted. Petitioner also requested additional discovery to obtain a recording of Petitioner's statement to police following the incident.[1]

## DISCUSSION

**Applicable Legal Standards**

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citations omitted). Under Missouri law, "a claim must be presented 'at each step of the judicial process' to avoid default." *Id.* at 1087 (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). "Failure to raise a claim on

---

[1] Because the record is sufficient to fully consider all of the asserted grounds for habeas relief, the Court will not reopen discovery. 28 U.S.C. § 2254(e)(2); *see also Chatman v. Steele*, No. 4:08CV1656DDN, 2009 WL 5030784, at *10 (E.D. Mo. Dec. 14, 2009) ("[P]etitioner is seeking to reopen the record of the state court decisions in his case. This he may not do, because this court is limited in its habeas corpus jurisdiction under 28 U.S.C. § 2254, and the record is sufficient to fully consider all of the grounds for habeas relief.").

appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (citation omitted); *see also Moore-El v. Al Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) ("Where a claim is defaulted, a federal habeas court will consider it only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.").

Additionally, where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

> '[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions. And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citations omitted). "This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Id.* (citation omitted). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted).

**Promise of Reduced Sentence**

First, the Court considers whether Petitioner's first asserted claim fails as a matter of procedural default. Petitioner's claim that trial counsel was ineffective in promising him a sentence not greater than 20 years was procedurally defaulted in state court because although the claim was raised in Petitioner's motion for post-conviction relief, it was not preserved on appeal from denial of that motion. Instead, Petitioner's appeal of the

motion court's initial denial of relief focused solely on the motion court's failure to address Petitioner's second argument: that he was not informed of the doctrine of self-defense. *See* Doc. No. 6 at 14. Thus, he failed to raise his first habeas claim in appealing his denial of post-conviction relief. Accordingly, consideration of this claim is barred.

Moreover, even if the Court were to consider this claim on its merits, Petitioner's claim would fail. To obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that his counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court applied *Strickland*'s two-part test to ineffective assistance of counsel claims arising in the context of guilty pleas, and explained that to prevail, a petitioner must show prejudice, an inquiry which "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. Moreover, "[w]here a guilty plea is challenged under the second prong of the *Strickland* test the defendant must show that . . . he would not have pleaded guilty and would have insisted on going to trial." *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997) (citing *Hill*, 474 U.S. at 58-59) (quotation marks omitted).

Here, the motion court reasonably found that Petitioner cannot claim that he was prejudiced by his counsel's alleged promise that he would not be sentenced to more than 20 years in prison, because the plea court expressly informed Petitioner prior to his guilty plea that it was unlikely to deviate from the State's recommended sentence of 25 years. The motion court's adjudication of this claim was factually and legally reasonable. *See, e.g., Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011) (finding no

prejudice because "allegedly omitted information had been 'fully supplied to [the petitioner] throughout the plea process' and the district court had 'explicitly informed' the petitioner of the potentially applicable sentences during the plea colloquy").

**<u>Failure to Advise On Self-Defense and Lesser-Included Offenses</u>**

Next, the Court considers Petitioner's claim that his counsel was ineffective in failing to inform him about the possibility of arguing self-defense at trial, or about the possibility of lesser-included offenses. Again, relief for ineffective assistance of counsel requires a petitioner to show that his counsel's performance was both deficient and prejudicial. *Strickland*, 466 U.S. at 687. Establishing ineffective assistance of counsel is a "heavy burden," *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996), because "[i]n determining whether counsel's conduct was objectively reasonable, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Nguyen*, 114 F.3d at 704 (citing *Strickland*, 466 U.S. at 689) (internal quotations omitted). Furthermore, both prongs of the test must be satisfied for the claim to succeed; if a defendant fails to make a sufficient showing under one prong, the court need not address the other. *Strickland*, 466 U.S. at 697.

In holding that Petitioner did not receive ineffective assistance of counsel, the state courts gave considerable weight to Petitioner's answers during the plea colloquy. But a layperson cannot be expected to be aware of all legal defenses, and therefore, the Petitioner's representation that his attorney explained all "possible defenses" to his satisfaction is not dispositive evidence of sufficient representation. The Eighth Circuit has explained that "[a] guilty plea must represent the informed, self-determined choice of

the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences . . . of the feasible options." *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981).

Moreover, the Court is not persuaded by the Missouri courts' reasoning that "[s]elf defense is not a technical or sophisticated legal defense that is beyond the knowledge of a lay person," *Muhammad II*, 367 S.W.3d at 663. Similarly, effective counsel should advise a client of the lesser-included offenses of voluntary or involuntary manslaughter if those lesser-included offenses are in fact available. *See, e.g., Wiggins v. State*, No. ED 101660, 2015 WL 1915324, at *4 (Mo. Ct. App. Apr. 28, 2015) (distinguishing *Muhammad II*, and holding that "while self-defense is evident, the concept of sudden passion arising from adequate cause is not as evident to a non-lawyer").

Nevertheless, the Court concludes that counsel's assistance was not ineffective, and Petitioner is not entitled to habeas relief.[2] In *Patrick v. Purkett*, No. 4:07CV00974 ERW, 2010 WL 2926230, at *3 (E.D. Mo. July 20, 2010), a petitioner who bludgeoned his victim to death following an argument in which the victim swung an electrical cord at the petitioner brought a habeas corpus claim following his guilty plea. The petitioner claimed he was prejudiced by counsel's failure to advise him as to the possibility of arguing self-defense, or of the possibility of being found guilty of lesser-included

---

[2] As the Eighth Circuit has explained, "In reviewing whether the state court's decision involved an unreasonable application of clearly established federal law, we examine the ultimate legal conclusions reached by the court, not merely the statement of reasons explaining the state court's decision." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted).

13

offenses to second degree murder, including voluntary manslaughter or involuntary manslaughter. The court found that counsel was not deficient because the petitioner would not have met the requirements for a jury instruction on self-defense or the proffered lesser-included offenses. The court explained that the "[p]etitioner's plea counsel was not ineffective in failing to suggest that he could proceed to trial and assert self-defense, or seek to obtain a guilty verdict at trial on the lesser offenses of voluntary or involuntary manslaughter. The facts alleged demonstrate that none of those trial strategies would have been viable." *Id.* at *6.

Here, too, plea counsel in the instant matter would not have rendered unconstitutionally ineffective assistance by failing to discuss with Petitioner the possibility of going to trial under a self-defense theory. Missouri statutory law establishes that to receive an instruction on self-defense in a case where lethal force is used, a criminal defendant must show:

> (1) an absence of aggression or provocation on the part of the defender; (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death; (3) a reasonable cause for the defendant's belief in such necessity; and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

*State v. Thomas*, 161 S.W.3d 377, 379 (Mo. 2005) (citing Mo. Rev. Stat. § 563.031). In light of the facts as Petitioner agreed to them in his guilty plea hearing, Petitioner cannot show "a real or apparently real necessity for the defender to kill," a required element of the defense. While there may have been some physical contact between Petitioner and

14

his victim, there is no indication of any perceived need to kill. Nor do the facts suggest that Petitioner attempted to "avoid the danger and the need to take a life." Instead, the facts suggest that Petitioner shot the victim with little or no provocation and as a first resort upon feeling threatened. No court or jury could rationally find that Petitioner was justified in shooting Rives in the chest because Rives "slipped and fell into him." *See Patrick*, 2010 WL 2926230, at *3 ("A court or jury could not rationally find that [the petitioner] was justified in bludgeoning the victim on the head and then strangling her . . . in order to save himself from further insults, pushes, or strikes from an electrical cord, and counsel therefore was not ineffective in deciding not to discuss this defense with Petitioner.").

Similarly, under Missouri law, voluntary manslaughter would not have been legally feasible. Voluntary manslaughter is a class B felony, defined as causing the death of another person under circumstances that would constitute murder in the second degree,[3] except that the death was caused "under the influence of sudden passion arising from adequate cause." Mo. Rev. Stat. § 565.023. "Adequate cause" refers to "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." *Id.* at § 565.002(1). "Sudden passion" is "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the

---

[3] Pursuant to Missouri law, "A person commits murder in the second degree if he 1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person . . . ." Mo. Rev. Stat. Section 565.021.1.

time of the offense and is not solely the result of former provocation," *id.* at § 565.002(7); it "may be rage or anger, or terror, but it must be so extreme that, for the moment, the action is being directed by passion, not reason." *State v. Fears*, 803 S.W.2d 605, 609 (Mo. 1991) (internal quotations and citations omitted).

Here, counsel was not ineffective by failing to discuss a voluntary manslaughter theory, because no factfinder could reasonably conclude that Petitioner had adequate cause or experienced sudden passion before shooting Rives. Instead, the facts to which Petitioner admitted suggest only that Rives and his associates may have approached Petitioner and that some altercation may have occurred. But the facts suggest that any physical contact with Petitioner was incidental and insufficient to give rise to a voluntary manslaughter instruction at trial.

Finally, plea counsel was not ineffective for failing to advise Petitioner of the possibility of being convicted only of involuntary manslaughter. A person who "[r]ecklessly causes the death of another person" commits involuntary manslaughter. *See* Mo. Rev. Stat. § 565.024.1(1). The Missouri Supreme Court has explained "recklessness" as it relates to purported self-defense as follows:

> Recklessness resembles knowing conduct in one respect in that it involves awareness, but it is an awareness of risk, that is, of a probability less than a substantial certainty. By contrast, to act knowingly is to be aware that the conduct is practically certain to cause a result. In sum, reckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force.

*State v. Beeler,* 12 S.W.3d 294, 299 (Mo. 2000). A killing resulting from an unreasonable belief that the conduct was necessary to save the killer's own life, therefore,

can constitute an involuntary manslaughter, a doctrine known as "imperfect self-defense." *See Beeler*, 12 S.W.3d at 298. However, the jury in such a case would need to "believe the defendant acted unreasonably in defending himself, but not believe defendant had the requisite intent for second degree murder; that is, he did not knowingly cause the victim's death or have a purpose to do great harm to the victim." *Id.* at 300; *see also State v. Newberry,* 157 S.W.3d 387, 397 (Mo. Ct. App. 2005) (a factfinder can only "draw an inference of recklessness if there is a basis to believe that the defendant did not knowingly cause the victim's death or have a purpose to do great harm to the victim") (citing *Beeler,* 12 S.W.3d at 300). Here, Petitioner could not have conceivably claimed that he did not knowingly cause Rives's death or have a purpose to do great harm to Rives when he shot him. The facts do not support such an inference.

Thus, none of the alternative trial strategies proffered by Petitioner would have been viable, and plea counsel was not ineffective by failing to discuss those strategies with Petitioner. In sum, while the Court relies on grounds different than those set forth by the state courts, the Court finds that the decision of the Missouri Court of Appeals did not violate clearly established federal law and was not based on an unreasonable determination of the facts.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of Petitioner's claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Miller-El v.*

17

*Cockrell*, 537 U.S. 322, 338 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Rasheed I. Muhammad for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 16th day of March, 2016.

                                            */s/ Audrey G. Fleissig*
                                            AUDREY G. FLEISSIG
                                            UNITED STATES DISTRICT JUDGE